Good afternoon everyone and welcome to the Ninth Circuit and thank you for your patience while we had a delay before getting started. We thank Judge Lucero from the Tenth Circuit for joining us today and we'll take the cases in the order on the day sheet. The first case was submitted on the briefs United States of America v. Tyrone Davis. The first case for oral argument is consolidated United States v. Carlos Montano and United States v. My apologies, Your Honor. Good afternoon. My name is David Schlesinger. I represent appellant Carlos Montano. With the court's indulgence, I'd like to use the first approximately six and a half minutes of the consolidated argument before yielding to my colleague Mr. Lechman. It's our intention to reserve collectively two o'clock. Thank you, Your Honor. With the court's further indulgence, I'd like to use my time by discussing two of the Rule 11 related issues that we've raised in our opening libraries. More specifically, these are first the District Court's plain error which violated the substantial rights in our estimation of the 11B2 requirement of determining that Mr. Montano's change of plea resulted from adequate competence and intelligence before then briefly moving to whether Mr. Montano's substantial rights were violated by the plain error, which the government itself has admitted was plain error of not having an interceding indictment, which is the section 922G1 felon in possession. Now, regarding the first issue, the Rule 11B2 failure, we know that much like in this court's opinion in Puente Galvez, which issued last year, there were several serious deficiencies that call into question whether there was an adequate inquiry regarding Mr. Montano's competence and intelligence. The foremost, I think, failure by the District Court resulted from not querying Mr. Montano about whether he was using any medications or was he under the influence of controlled substance. This should have been at the forefront of the District Court's attention because in the government's factual basis, it noted that Mr. Montano, at the time of his supposed felon in possession offense, had been sipping promethazine, which the PSR detailed is a mixture of prescription-strength cough syrup combined with codeine, which, as the court knows, is under federal law scheduled to control substance. In the PSR further at page 23, the PSR noted that Mr. Montano had admitted to having been an habitual daily user of promethazine. For two to three years prior to his arrest, he daily used that controlled substance. So, in our estimation, that was the first serious error that the District Court made. So, what was the reason that Mr. Montano would not have taken the plea absent if the colloquy had been correct? There is, Your Honor, and we know that, of course, under Dominguez, Benitez, Monzon, Fuentes, Galvez, and related cases, that this court only needs to assess whether there was a reasonable probability that but for the District Court's Rule 11 errors that he would not have changed his is the failure to inquire regarding his controlled substance use, his limited education. He had only graduated, he'd only attained eighth grade education before dropping out of school, and even before then, as the PSR noted, he hadn't even completed a full year of schooling at any of the six elementary schools that he attended. Excuse me, so what was the reasonable probability that he would have not entered the plea? Why was that a reasonable probability, or what evidence was offered on that? Well, as Fuentes-Galvez noted, Your Honor, when you're looking, when you're considering a defendant's competence and intelligence, you consider whether there is a reasonable probability that, you know, but for the inadequate colloquy, that there were questions regarding whether the defendant had the requisite competence and intelligence in that, therefore, there was a serious risk that there was an involuntary plea as a result. So, that's our... But Fuentes-Galvez, they said there was a unique susceptibility to coercion. So was there a unique susceptibility to coercion in this case? There was not, Your Honor, but that's only one half of the Rule 11b-2 inquiry. The first is regarding whether there were any promises or threats made that could have resulted in coercion, but the second part is whether the plea was voluntary. So, we would submit that half of the Rule 11b-2 required inquiry did not occur, and that seriously called into question whether Mr. Montano had entered an involuntary plea. I noticed that we're approaching the six and a half minute mark, and I want to make sure my colleague has adequate time. If there are no further questions... Actually, I do... We're not quite at the six and a half minute mark. I miscalculated. I think I have another minute or so. The second basis that we're arguing, Your Honor, is the inadequate plea factual basis for the plea under Rule 11b-3, and that is at a very rudimentary level. What happened here is that the government, in providing the factual basis, swapped in the factual elements, the factual basis for Count 27 instead of Count 24, which he pleaded guilty to, and it also did not state correctly that there had indeed been interstate movement of the firearm at issue. Now, I know that there... Well, counsel, let me ask... I don't understand the interstate thing, because isn't this firearm made in Croatia? The PSR reveals that the firearm was manufactured outside of California. It's simply that the factual basis that the government proffered in support of the plea agreement under Rule 11b-3 did not state that. It merely stated that the gun had been stolen. So at the time of the plea, for all everyone knew and understood, that the firearm very well could have been manufactured in California and been stolen and simply moved interstate. So that's the issue, Your Honor, is the evidence that the government adduced at the time of the plea. I guess... Yeah, so this isn't a case where the government couldn't have had him... Couldn't have told him the right information. And so your position is that somehow if the government had said, yeah, this firearm was made in Croatia and was stolen in, I think, Colorado, that that would have somehow changed his plea, his willingness to plead? Your argument, and I don't want to take too much from my colleague's time, but if I could briefly respond, Your Honor, my argument is simply that there's a reasonable possibility that Mr. Montana would have seen that the government had proffered such a sloppy factual basis and therefore might have decided there's a reasonable probability that he might have decided not to change his plea as a result of it. And also simply... I think so, in hopes that, like, they would be sloppy at trial and maybe he'd win at trial. Like, is that the idea? I think that's the theory, Your Honor, is that this was such a patently incorrect factual basis. It pertains to an incorrect count. It didn't correctly deduce any evidence regarding the interstate element that he might have decided for the count 24 plea to have done it differently and to have not changed his plea. And then, of course, we have the other arguments regarding... I don't want you to take too much of your... I understand your theory, I think. I don't want you to... Thank you, Your Honor. If there are no further questions, I'll kindly yield to my colleague, Mr. Lechman. Your Honors, good morning. Ben Lechman on behalf of Mr. Chavez. The main issue in his case is really the proportionality of his sentence, the disproportionality in terms of how long it is. There are two other issues, which is the district court's failure to follow Rule 32 and its refusal to really unbundle the sentencing on a remand. Not a remand, I'm sorry. It was really a Rule 35 by reopening the sentencing within 14 days. And as this court said in Handa, those are really the two methodologies for a district court redoing its remand. The sentencing should be unbundled. And his initial sentencing seemed to be animated by factors that were inappropriate in terms of the district court's sort of personal bias against sex workers and that type of offense. He issued sort of a long, I guess, take on his dim view of sex workers right before he sentenced Mr. Chavez to this time. And when you look at the sentence imposed here in relation to the other sentences, it's completely disproportional. It takes it outside of Rita in terms of the presumptive reasonableness of a sentence when one defendant's guideline sentence is so disproportionately long compared to all the other defendants. The government points out that his sentence was comparable to Montano's and that another basis for the disparity is that only shop Mr. Chavez went to trial. Could you respond to that? Sure. With regard to Mr Montano, I know that his record contained violence. His actions contain violence. Mr Chavez do not. I also don't agree with Mr Montano's sentencing. It's not part of my representation. Um, and the I'm sorry. The court's second question was the only Mr Chavez went to trial. And as a lawyer who and I understand I understand there can be a there there must be as a lawyer who handles trial cases, most of them are settled as results of a plea agreement. I understand that people normally can and should receive less in that context. However, that there's got to be some limitation on that. If you follow the alternative thinking to its logical conclusion, you have a system where the only people who get lengthy sentences are those who insist on their rights in that system. Those people don't really have any rights. So we've held that as a basis for a disparity. So, um, isn't that a reason? I understand your comment that it seems like a burden on the exercising the trial, right? But we've upheld that as being a basis for had a disparate sentence, not in unlimited fashion, though, Your Honor. In this case, the factors just because he used his trial rights, it shouldn't make it that it's 300% more than the other defendants. There's got to be some due process limitation on this, and I would suggest that this far exceeds that, where you have people accused of much worse conduct, convicted of much worse kind of in the same case, selling ghost guns, trafficking and firearms. Uh, 35 months for that defended another one dealing with firearms and greater quantities of methamphetamine 17 months. So you've got people that air committing the same offense in a greater way, and I would don't take my word for it. I would encourage the court to take the government's word for it in its sentencing memorandum for codependent belong. Um, you've frozen for us. Sam, can you contact Mr Legman? I think Sam is working on it. Yeah. Judges. Um, just sorry. Just bear with us a moment. He should come back in a second. If not, I've instructed him to switch to using a phone. Looks like he's back now. I am. Sorry about that. I don't know what the last thing the court heard before it froze. I was about to switch to the phone. I think I'm pretty close to wrapping up my comments. My point was just that many of the other defendants in the same case committed greater crimes, received a disproportionately completely smaller sentence. And I think that it is a trial tax, and the court's statements about why Mr Chavez receives to higher sentence really violate Apprendi because they're based on conduct that Congress has already set a five year cap on. With that, I would, uh, submit unless the court has questions and reserve for rebuttal. All right. Thank you. We'll hear from the government. May it please the court. Miriam Hinman for the United States. I will be arguing the Montano case, and my colleague Kim Sanchez will be arguing the Chavez case. We have requested to allocate eight minutes for the Montana argument and seven minutes for the Chavez argument. Okay, please watch the clock. I will do that. Thank you, Your Honor. There were errors in Montana's plea proceeding, but those errors did not affect his substantial rights or the fairness of his convictions. Montana does not dispute that he committed the three offenses to which he pled guilty, and he has not shown that if the errors had not occurred, he would have gone to trial on the 13 counts in the indictment. Could I interrupt for a moment and ask about Montana's waiver of his appeal rights? So we have several cases say saying that an appeal waiver is valid, even if the district court committed Rule 11 error, even if it was so long as it was not plain error. So meeting all the plain error requirements included substantial rights and the like. Are we looking at a similar situation here where, in your view, where he's waived his appeal rights for this for this case? Uh, sort of, Your Honor. The government does believe that there is a valid appellate waiver, um, based on this Rule 11 colloquy. However, the government is not asking this court to enforce the appellate waiver as a bar to considering the merits of any of the issues that the appellant has raised in this particular appeal. And so the court does not actually need to reach, uh, the enforceability of the appellate waiver in order to decide the other issues that the appellant has raised. Okay, thank you. So I plan to focus my argument on the factual basis and the Rule 11 advisements because there's now controlling authority that forecloses Mantano's arguments on the rehaif issue and the supervised release condition. I'll address those two issues very briefly now, just so the record is clear on the rehaif issue. The Supreme Court's decision in Greer forecloses relief because Mantano has not argued that he would have presented evidence that he did not know he was a If there are no questions on those two issues, I will move on to the factual basis. The plea agreement's omission of the facts for count 24 did not affect Mantano's substantial rights. I want to be clear that this omission is not up to the standards by which the government wishes to operate. Therefore, although Rule 11 B three and Ninth Circuit law generally require only that the factual basis be established by the time of judgment, the government is conceding that an error occurred at this plea hearing. So can you agree? Counsel, can you go ahead and jump to the competence and intelligence issue? Because I think that is something that I'd like to hear. You know, it seems his position is that the district court did not ask him about competence, intelligence and did not inquire into that. And so that that that means that his that that undermines his plea agreement. So can you address that? His competence, intelligence, his background? Why? Why? That's not a problem. Yes, Your Honor. So Rule 11 requires that the court make an inquiry into the voluntariness of the plea. In this case, the court did confirm that there were no threats or promises, and Montana did not demonstrate any confusion during the proceedings. Montana was relying on Fuentes Galvez case. Um, which is really not like this case in Fuentes Galvez. This court found that adequate because the defendant had, quote, significant mental challenges and the magistrate judges complete lack of inquiry into whether the plea was coerced by any threats or promises and quote. Neither of those things was present in this case. The defendant is making a an argument that the court should have asked about use of controlled substances. But there was no indication of confusion during the colloquy, and no argument has been presented that the defendant Montana was, in fact, under the influence during this colloquy. And, in fact, when your honor, Judge Akuta asked about prejudice, the defense counsel could not explain what the actual prejudice was because it's just a speculation that the question could have been asked. But there is no indication that it would have changed the outcome. In this case, it was adequate that the court inquired about threats or promises that there was no indication of any confusion or hesitation in entering the What precisely does the government concede? I thought you were made. I thought you said you were making some concessions. Uh, yes. Returning to the factual basis issue. Um, the government is conceding that there was an error at the hearing in accepting the written factual basis as adequate for the plea. However, that error did not affect Montana's When we turn to the step three of the plane air analysis, there's no reasonable probability that Montana would have gone to trial because if the parties had realized the omission in the plea agreement, they would simply have amended the agreement to contain the same factual basis that the PSR contained. There's no dispute here that Montana committed the felon in proved it at trial. That makes this case very different from monzon on which the appellant relies in monzon. The defendant actually disputed an element during the colloquy, and the record did not show that the government could prove it here. There's no dispute about committing the offense, and the government could prove it. So the appellant's claims that he would have gone to trial on the 13 counts in the indictment instead of simply amending the plea are quite unrealistic. Another reason that's so unrealistic is that the plea agreement gave the appellant an opportunity to plead guilty to just three offenses. If he had gone to trial, he would have gone to trial on 13 counts and would have faced much greater sentencing exposure. So he has not shown that his substantial rights were affected by the error in the factual basis or by any of the other errors that occurred in this plea colloquy. I see that my eight minutes are up, so if there are no further questions, I will turn the time over to my colleague. All right. Ms. Sanchez? May it please the court. The 250-month sentence, guideline sentence, was fair and reasonable in this case. Appellant's counsel focused on the disproportionality and the disparity between this defendant's sentences and other defendants in this case. However, as the court noted in Bullock, which was highlighted by the defendant, comparing defendants in the same case is not the essence of disparity. But even if it was, and even insofar as the court focuses on that for 3553A factors, there were differences in this case that were highlighted by the leadership enhancement that the trial judge found. Both, he found a leadership enhancement applicable for the drug trafficking conspiracy. And while not contributing to the fourth level enhancement, the trial judge also found that there was leadership in the human trafficking conspiracy as well. So several of the defendants who were in the same case faced lesser sentences, but were under the leadership of this defendant. Additional. Could you address the argument that opposing counsel made at the court? I guess the court here held the sentencing in advance while the government was investigating whether one of the offenses in his criminal history was actually committed by somebody else, and then went on to, after getting the information, went on to sentence him, but didn't do a full resentencing. Could you address whether that led to an impropriety? Your Honor, the sentencing hearings taken as a whole, which were only a week apart in this case, did cover the requirements of Rule 32. And also, the judge's analysis under 3553A, and his consideration of the defendant's objections and ruling in favor of or against the defendant on each of those. So the hearing between the two separate days did acknowledge the change that the government reported to the court. And the judge did allow both of the parties to comment without restriction and argue at the second proceeding, which was a week later. The judge did accomplish the, did cover all of the factors that should have been covered for sentencing purposes under 3553A, as well as Rule 32. So between the two proceedings, there was no error by the trial judge. The judge did cover specifically the nature and circumstances of the offense. He did look at the defendant's characteristics and history. The judge specifically cited that he had reviewed the PSR, and he also had reviewed the filings by Defense Counsel. And he adopted not only the PSR's conclusions, but also found the PSR's reasonings persuasive, and specifically adopted the reasoning of the PSR, as well as the government on two particular points the defendant had raised. And those two points had to do with gang affiliation, as well as leadership. The defendant had argued that he shouldn't be considered for the leadership enhancement, because there weren't five participants. The government presented evidence at the hearing, citing to trial evidence that, in fact, there were five participants. The only participant the defendant had disputed was Manny Soto, and the judge found that Manny Soto had, in fact, participated in the enhancement was applicable. So the judge did cover the objections raised by the defendant, and the 3553A factors. One of the things that is notable about the proceeding is Defense Counsel also asked for a guideline range sentence. While the judge imposed a sentence higher than the defense attorney asked for, the guideline range was 210 to 262. And that was the guideline range that the defense attorney had argued for. And at the second proceeding, Defense Counsel twice asked for a low end guideline sentence of 210 months. And as this court has held, when the district court imposes a guideline range sentence, there is a presumption of reasonableness. And if there are no more questions specifically on the two proceedings, I have nothing further to add. All right, we'll hear rebuttal. Thank you. I'm going to try to be very brief because I want to make sure that Mr. Lechman has adequate time, given the technical difficulties he had earlier. I would like to read directly from Fuentes-Galvez to illustrate precisely the standard that this court applies in the Rule 11b2 context. This is 969, Feathered at 917. Under the totality of the circumstances, the lower court's failure to make further inquiries created a significant enough risk of overlooking potential involuntariness to meet this burden. So this court considers the adequacy, in this case, the almost complete inadequacy of the Rule 11b2 inquiry regarding the elements that Fuentes-Galvez said are required in this context. Counsel, I want to make sure I'm clear what your argument is. Are you arguing that if the district court had done the investigation into the intelligence and competency, that the district court would determine that your client wasn't intelligent or competent enough to be able to plead? Or are you just saying that if the district court had done that, that somehow doing that would have possibly changed it so that your client would not have pled guilty? Which one are you arguing? We're arguing, Your Honor, that there is a reasonable probability that the district court might have determined, based on the answers that Mr. Montano might have recently given him, that the plea could not have been entered intelligently, involuntarily, as both Rule 11 and the due process clause of the Fifth Amendment require. It doesn't, I mean, I think earlier the government said something to the effect that, you know, there was no indication in any, you know, during the whole colloquy, the judge is asking all kinds of questions, right, to the defendant. Maybe not all of the correct questions, but it asked a whole bunch of questions, got a whole bunch of answers that we can read in the transcript, and there doesn't seem to be a whole lot there that would have tipped off the judge that he wasn't somehow competent or intelligent enough to plead. He pled in other cases, I think, and so I'm having trouble trying to figure out, like, what if the judge had asked about that, like, how that would have changed the result here, how that would have caused the judge to go, oh, wow, I asked that question, and your answer caused me to decide that you're not competent now, given all of the other things that went on, I guess is what. I think, given Mr. Montano's limited education, plus the possibility that he was either, A, still using the process. No, counsel, so to be clear, if he'd asked, I think the one thing you've said that he could have asked about was substance abuse, right, but, like, what would he have said, are you competent, and then your client would have said, well, I have a limited education, your honor, I have, you know what I'm saying, that wouldn't have happened, I don't think, so I'm trying to figure out how this goes down in a way that causes the prejudice that you're saying it must have caused. I think what could have happened was he would have elicited the same information that the used for two to three years from ethazine on a daily basis, and, you know, either was Mr. Montano was then either illicitly using it via contraband in the Fresno County Jail where he was detained, or he was suffering from withdrawal symptoms, because codeine is an opioid, and it's well-established that people addicted to codeine... I have no doubt in my mind that if he'd asked, you know, the actual magic word, is this voluntary, right, and he would have said yes, it's voluntary, I don't think he would have said no, and he'd say, well, I just want to make sure, have you used any substances, no, I haven't, have you used any in the past, yeah, a lot, you know, and you follow that trail down, and at the end of the day, whatever the judge would have asked him, he would have weighed that against all of his other interactions with him, which he seemed to be giving intelligent enough answers to his other questions he was asking, it's just hard for me to see how that would have somehow caused the judge to be like, wow, the one answer that he used a lot of this cough syrup, that's caused me to, I mean, it seems like your whole thing rests on that that one answer would have caused the judge to go and say, oh, I guess you're not confident. That plus his limited education, Your Honor, and simply, you know, trying to, if it had been a proper Rule 11 colloquy, he would have asked follow up questions regarding whether he was experiencing any symptoms from withdrawal or whether he was still using it. That's why it's a reasonable probability standard as the Supreme Court established in Dominguez Benitez, you know, in reviewing this court isn't required to ascertain that there was a preponderance of evidence that he would have, would not have changed his plea. It's simply reasonable probability, which is less than a preponderance of the evidence. The rule and the case authority both are set in place to prevent speculation of the type that we're being asked about, right? It is, Your Honor, and that's why the Rule 11 elements that were then Rule 11, B1 and B2 and B3 are mandatory. It's so that after the fact, we don't have to engage in this kind of inquiry. But, you know, fortunately, because it's a reasonable probability standard, we don't, Your Honors, are not required to ascertain beyond, based on a preponderance of the evidence, whether it's more likely or not that he would have refused to change his plea. It's simply if there, you know, something less than 50% chance. So, you know, I do understand Your Honor's, you know, concern, you know, both Judge Lucera and Judge Van Dyke, but I think that there is enough evidence in this record at this stage to determine that Mr. Montano's substantial rights were violated. I do say that I'm long over time. Thank you. I think we have your argument. We'll give Mr. Legman a minute, please. Can Thanks, Your Honors. Much of the, this attorney filed, the trial attorney filed a set of 29 separate objections. The district court only specifically ruled on two of those at the government's request at the first hearing. You know, the district court only adopted the PSR as insufficient. At that first hearing, the government made much of this third conviction or this, I'm sorry, second prior conviction. And they said, Judge, the counts of conviction here don't really comprise this defendant's culpability. This is his third drug conviction. And when the court used that as a rationale and imposed 400 months, turned out not to be true. At the second sentencing, the district court said, okay, he doesn't have that conviction. He's not a career offender. And he said, the analysis is the same. It's basically a non sequitur. It couldn't be the same. And all he did was just adopt the PSR. He never ruled on these objections. And finally, with regard to his recommendation, the trial attorney did recommend 210 months at the second proceeding. And I think that's sort of unsurprising given the fact that contextually, the court had just imposed 400 months. So as defense counsel, I think you want to say relevant, contextually stay in the game. So it doesn't surprise me the up to his asking price. His initial request, which I think is the right one, was 168 months at the first sentencing. And that's really, I think it's more than reasonable in this case. And that's basically it. I would submit unless the court has further questions. Okay, we thank both sides for their argument and the case of United States versus Carlos Montano and United States versus Filiberto Chavez is submitted.
judges: Lucero, IKUTA, VANDYKE